**SO ORDERED.**

**SIGNED this 26 day of June, 2012.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

**IN RE:**

| | |
|---|---|
| **BILLY RAY ELKS,** | **CHAPTER 13** |
| **SHARON STINSON ELKS,** | **CASE NO.  10-08027-8-RDD** |
| **DEBTORS** | |

**ORDER GRANTING MOTION FOR SANCTIONS AND DAMAGES FOR
VIOLATION OF 11 U.S.C. § 362 AND BANKRUPTCY RULE OF PROCEDURE 9037**

Pending before the Court is the Motion for Sanctions and Damages for Violation of 11 U.S.C. § 362 and Violation of Bankruptcy Rule of Procedure 9037 (the "Motion") filed by Billy Ray Elks and Sharon Stinson Elks (the "Debtors") on January 23, 2012; and the Response in Opposition to the Motion (the "Response") filed by EZ Pay Buildings, LLC ("EZ Pay") on February 14, 2012. The Court conducted a hearing on May 22, 2012 in Greenville, North Carolina to consider the Motion and the Response.

**BACKGROUND**

The Debtors filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on October 1, 2010.  The Debtors are individuals who reside in Greenville, North Carolina.

On February 2, 2010, the male debtor and EZ Pay entered into a Rental Purchase Agreement (the "Agreement") for the purchase of a Cape Code 10 x 14 storage shed (the "Shed"). The male debtor purchased the Shed for use as a "man cave," a place of refuge for him and his friends. The male debtor moved personal items into the Shed, including, but not limited to, an air conditioning window unit, a 22" television, a satellite dish, a stereo, lamps, a refrigerator, East Carolina University Pirate memorabilia, trophies, pictures, plaques, a table, a bar stool, and a recliner. The Shed was hooked up to a satellite dish and electric power.

The Debtors listed EZ Pay as a creditor on their Chapter 13 Petition. Notice of the bankruptcy filing and the date of the Section 341 meeting of creditors was sent to EZ Pay by the Bankruptcy Court on October 1, 2010. On October 12, 2010, EZ Pay filed Proof of Claim 4-1 ("POC"). EZ Pay's POC listed the amount of the claim as of the date the case was filed as $4,582.20. The POC also listed the male debtor's first and last name, along with his full social security number, the full account number, and a non-redacted copy of the male debtor's drivers license. The Debtors filed a proposed Chapter 13 Plan on October 26, 2010 (the "Plan"). On February 28, 2011, the Plan was confirmed and provided for EZ Pay's POC in the amount of $4,582.20 to be paid through the Plan at 5 1/4 %. On August 29, 2011, the Debtors sought relief pursuant to Bankruptcy Rule of Procedure 9037 to seal the POC filed by EZ Pay. The POC was ordered sealed on September 15, 2011.

On October 26, 2010, the Debtors received a letter of repossession from EZ Pay. The letter stated that if payment in the amount of $389.40 was not received on or before November 15, 2010 the Shed would be repossessed. On November 17, 2010, at the direction of EZ Pay, the Debtors Shed was repossessed. At the time of repossession, the repossession agent cut the power cord to the

2

Shed, attached chains to the Shed, and pulled the Shed onto a flatbed truck. Prior to repossessing the Shed, the repossession agent called the female debtor while she was at work. She testified that she informed the repossession agent that she and her husband were in a pending bankruptcy proceeding and requested that he wait twenty (20) minutes for her to get home so she could show him the bankruptcy papers. The repossession agent nevertheless repossessed the Shed. The female debtor testified that on her way home she met the repossession truck loaded with the Shed. She followed the repossession agent for three miles before the repossession agent agreed to call EZ Pay for verification of the Debtors' bankruptcy filing. After speaking with EZ Pay, the repossession agent returned the Shed to the Debtors' residence. Despite the Shed's return, the Shed was not reconnected to the power or otherwise placed in the position that it was in prior to the time the Shed was taken by the repossession agent. Nearly all of the Debtors' possessions inside of the Shed were destroyed. The Shed suffered damage to the foundation and several deep scratches to the exterior.

On July 27, 2011, the Debtors received a statement from EZ Pay stating that they owed $173.07 for the August 11, 2011 payment. The Debtors received a statement from EZ Pay on April 23, 2012 stating that they were past due $232.96 for April and May 2012.

After the repossession of the Shed, the Debtors testified that they suffered emotional and mental anguish, including public humiliation as the repossession occurred in front of the Debtors' neighbors. Debtors have also incurred costs over several months in an effort to replace and repair the damage created by EZ Pay's repossession agent.

The Debtors allege EZ Pay deliberately and willfully violated the automatic stay by repossessing the Debtors' Shed and attempting to collect on a pre-petition debt. The Debtors allege they suffered emotional distress, mental anguish, and public humiliation caused by the repossession

of the Shed and the receipt of the account statements. The Debtors also allege that they have incurred costs over several months in an effort to replace and repair the damage to the Shed and their personal property. The Debtors further allege EZ Pay intentionally communicated the male debtor's full social security number, the full account number, and a non-redacted copy of the male debtor's drivers license in violation of Bankruptcy Rule of Procedure 9037.

EZ Pay asserts any violation of the automatic stay was unintentional and that EZ Pay was following the terms of the Agreement because the Agreement stated "in the event Consumer files bankruptcy and Consumer includes this unit in bankruptcy, he or she will voluntarily surrender unit back to the Lessor...If the Consumer fails to make 1 payment of $175.00 Consumer voluntarily surrenders the leased property to the Lessor." EZ Pay asserts that it did not violate the automatic stay because when the Debtors filed for bankruptcy on October 1, 2010 they were delinquent $389.40, and when the repossession occurred, the Debtors were past due $604.10. EZ Pay further asserts that the male debtor never called EZ Pay after the receipt of the repossession letter to discuss the matter. Finally, EZ Pay argues that it did not violate Bankruptcy Rule of Procedure 9037 because it does not have procedures in place to protect the privacy, and prevent the disclosure of non-public personal information of its customers with which it has a customer relationship. Additionally, EZ Pay argues that it followed the directions listed on the Proof of Claim form that state a copy of the proof of contract and account statement must be attached to the Proof of Claim.

At the hearing EZ Pay presented evidence that EZ Pay contracted with Pine Creek Structures to repossess the Shed and Pine Creek Structures subcontracted out the repossession to Carolina Outdoor Builders, Inc. Therefore, EZ Pay should not be held responsible for the acts of Carolina Outdoor Builders, Inc. Christine Stevens, who is employed with EZ Pay and works with past due

accounts at the headquarters in Ohio, testified that if an account is two months past due, paper work is sent out to its various branches as a notification that a storage unit needs to be repossessed. Ms. Stevens testified that the order for repossession was sent out as to the Debtors' Shed before she was aware that the Debtors were in bankruptcy. She testified that she did not have a paper record of any repossessions that were ordered or cancelled, because she sends out many faxes each day and it is difficult to keep paper records of the faxes. She testified that once she was aware that the Debtors were in a bankruptcy proceeding, she faxed Pine Creek Structures instructions to not repossess the Shed. There was no testimony indicating that there was any follow-up after the fax was sent.

## DISCUSSION

Section 362(a) of the Bankruptcy Code imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under" Title 11. 11 U.S.C. § 362 (a)(6). The Bankruptcy Code also provides that any "individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1).

This Court has held "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (citing *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994), *rev'd on other grounds* 516 U.S. 16, 11 (1995)). Furthermore, "[i]f the creditor intentionally acts and its actions violate the automatic stay, the creditor's acts are willful." *In re Jones*, No. 06-00380-8-RDD, at 3 (Bankr. E.D.N.C. June 27, 2007).

Upon finding willful violations of the automatic stay, the Court may award actual damages, which include monetary damages "to compensate for actual emotional distress caused by a creditor's

violation of the automatic stay." *In re Thorpe*, Case No. 11-00862-8-SWH, 2011 WL 5909403 at *2 (Bankr. E.D.N.C. May 17, 2011) (citing *In re Kirkbride*, Case No. 08-00120-8-JRL, 2010 WL 4809334 (Bankr. E.D.N.C. Nov. 19, 2010) (allowing $10,000.00 damages for humiliation and embarrassment caused by a creditor's actions)). The Court may also award punitive damages for a willful violation of the automatic stay for the purpose of causing "a change in the creditor's behavior . . . ." *In re Sands*, Case No. 10-12205C-13G, 2011 WL 3962491 at *3 (Bankr. M.D.N.C. April 1, 2011) (quoting *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001)). The Court finds § 362(k) allows for recovery of actual damages, including emotional distress. *See In re Thorpe*, Case No. 2011 WL 5909403 at *2; *In re Kirkbride*, 2010 WL 4809334 at *5; *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004). Evidence of emotional distress need not rise to the level necessary to prove intentional infliction of emotional distress or negligent infliction of emotional distress under North Carolina law.

The Debtors filed their petition on October 1, 2010. The Debtors knew they were behind in their payments. They were concerned about maintaining the payments on the Shed and filed bankruptcy as a means of reorganizing their debts. EZ Pay was notified by the Court of the Debtors' bankruptcy petition. On October 26, 2010, the Debtors received a statement from EZ Pay stating that the Debtors were $389.40 past due, and that if they did not make a payment on or before November 15, 2010, the Shed would be repossessed. At that time, the female debtor called EZ Pay to notify it of the bankruptcy. EZ Pay stated that it was aware of the bankruptcy and that the Shed would not be repossessed. A week later, still concerned about a possible repossession, the female debtor again called EZ Pay to advise it of the bankruptcy filing.

Christine Stevens, agent for EZ Pay, testified that she handled the Debtors' past due account, and sent the account for repossession when the Debtors became two months past due. Ms. Stevens testified that she was aware of the Debtors' bankruptcy and that she did send a facsimile to the repossession agency Elk Creek. Further evidence of EZ Pay's knowledge of the bankruptcy is evidenced by the filing of its POC on October 12, 2010. While EZ Pay had knowledge of the bankruptcy filing, an order for repossession was initiated by EZ Pay.

On November 17, 2010, the female debtor received a phone call from a repossession agent who was at the Debtors' home. The repossession agent stated that he was from Carolina Outdoor Builders, Inc. and that he was there to repossess the Shed for EZ Pay. The female debtor informed the repossession agent that she and her husband had filed for bankruptcy, and requested that he wait at the home for twenty minutes so she could bring him the notice of the bankruptcy. The repossession agent did not wait for the arrival of the bankruptcy notice, and had repossessed the Shed by the time the female debtor arrived. The female debtor was able to reach the repossession agent and ask him to call EZ Pay to confirm the bankruptcy filing. When EZ Pay verified the bankruptcy filing, the repossession agent returned the Shed to the Debtors' home, only after the Shed and the Debtors' personal property located within had sustained significant damage.

The Court finds the Debtors have proven by a preponderance of the evidence that EZ Pay willfully violated the automatic stay pursuant to 11 U.S.C. § 362. The Motion for Sanctions and Damages for Violation of 11 U.S.C. § 362 and Violation of Bankruptcy Rule of Procedure 9037 is **GRANTED**.

The Debtors are entitled to actual damages in the amount of $2,827.00 for damages to the Shed and personal property. The Court holds that the Debtors suffered emotional distress, mental

anguish, and public humiliation from the repossession of the Shed. The neighbors asked the Debtors why the repossession was happening, and there was neighborhood gossip about the repossession of the Shed and the Debtors' financial status. Additionally, the destruction of the personal property within the Shed was extremely upsetting. As additional sanctions for the emotional distress, the Court awards damages for Debtors in the amount of $5,000.00.

The Court also finds punitive damages are appropriate in this case. The Court finds that EZ Pay did not properly handle the Debtors' bankruptcy notice, and that its policies are not what they should be with regard to record keeping and ensuring that repossessions are cancelled, especially when it has knowledge of a bankruptcy filing. Such business practice was reckless and willful. As punitive damages, the claim of EZ Pay will be marked paid in full.

The Debtors' attorney, Jane Leah Weatherly, is entitled to attorneys' fees in the amount of $3,000.00. The total of $10,827.00 shall be paid to Jane Leah Weatherly, 3434 Edwards Mill Road, Suite 112-366, Raleigh, North Carolina, 27612 within 10 days of the entry of this order. The Chapter 13 Trustee is directed to mark the claim of EZ Pay cancelled pursuant to the terms of this order.

**SO ORDERED.**

**END OF DOCUMENT**